**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 24-cr-00247-NYW-02

UNITED STATES OF AMERICA,

Plaintiff,

v.

2. JESUS DANIEL LARA DEL TORO,

Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VARIANT SENTENCE, [Doc. 285]**

---

The United States of America, by and through Peter McNeilly, United States Attorney for the District of Colorado, and Leah Perczak, Assistant United States Attorney, hereby respectfully responds to the defendant's Motion for Variant Sentence [Doc. 285]. The government joins in Probation's recommendation of a sentence of 156 months as to Count 1, with 84 months consecutively imposed as to Count 2, for a total of 240 months imprisonment, to be followed by a three year term of supervised release and asks that the Court order restitution in the amount of $3,939,076.26.

On May 5, 2026, the defendant pled guilty to Counts 1 and 2 of the Third Superseding Indictment without a plea agreement. Doc. 253. The defendant requests a downwardly variant sentence of 84 months as to Count 1, requesting a total sentence of 168 months.

The defendant is a member of the Tren de Aragua (TdA) criminal organization and was a member of a Denver-based TdA cell known as "Los Negritos" in June of 2024. "Los Negritos" coordinated with TdA leadership in Colombia and Venezuela to plan and carry out a violent, armed robbery of the Joyeria El Ruby jewelry store in Denver. The defendant and fellow TdA

gang members had planned the take-down style robbery to minute detail, including a ruse to get the first defendant into the store to conduct surveillance, having a backup team enter the store from the back, and having waiting getaway vehicles. The defendant is responsible for close to $4,000,000 in stolen gold and jewelry and multiple victims who were brutally assaulted by several co-defendants. As detailed below, a sentence of 240 months imprisonment is sufficient, but not greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## I. THE UNITED STATES SENTENCING GUIDELINES

The United States Sentencing Guidelines are advisory, but they remain "the starting point and the initial benchmark" in sentencing. *Gall v. United States,* 552 U.S. 38, 49-50 (2007). The guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a). *Id*. at 49-50. "A sentence is substantively reasonable when the length of the sentence reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *United States v. Martinez-Barragan*, 545 F.3d 894, 905 (10th Cir. 2008).

The government agrees with the United States Probation department, which calculates the total offense level as 29, and places the defendant in criminal category I. The defendant objects to several enhancements applied by the Probation Department. The government's responses to those objections are incorporated here by reference.

Because the guidelines are advisory and only one factor to be considered by the Court in determining a sentence under 18 U.S.C. § 3553(a), the government will frame its argument within the factors set forth in 18 U.S.C. § 3553(a) and proceed through those factors in the order in which they appear in the statute. A total sentence of 240 months imprisonment is responsive

to the requirements of 18 U.S.C. §3553(a), avoids unwarranted sentencing disparities, and reflects the seriousness of the offense conduct.

## II. DISCUSSION OF THE 18 U.S.C. § 3553(a) FACTORS

### a. Nature and Circumstances of the Offense

On June 24, 2024, the defendant and several other TdA members conducted a well-orchestrated, preplanned armed robbery at the Joyeria El Ruby jewelry store in Denver, Colorado. Joyeria El Ruby is a family owned and operated store that has done business in Denver for decades. In 2024, the store had a profitable wholesale business and also did significant retail sales. The victim store owners have noted that much of their customer base was made up of returning customers or their families, as the store was well known within the community. On June 24, 2024, the Joyeria El Ruby was open for business and was full of customers and employees. Many of those employees were the store owners or their family members, and one victim, M. M. had her two year old son with her at work. At roughly at roughly 1:45 pm, codefendant Oswaldo Lozada-Solis, entered the store first and acted as a lookout. Lozada-Solis posed as a customer and did some visual reconnaissance, then sent a text to his co-conspirators that it was time to enter and begin the robbery.

The defendant was among the first group to enter the store and begin the robbery. The defendant entered the man-trap area of the store with co-defendant Newman Castillo-Delgado and Alexis Vegas. *See* Doc. 289, Exhibit 8. The defendant was dressed in a black baseball cap with a red bill, a black hooded sweatshirt and jeans, and was armed with a semi-automatic pistol fitted with an extended magazine. The defendant and co-defendant Castillo-Delgado immediately pulled guns out of their waistbands and pointed their firearms at the store's occupants. The defendant grabbed a customer who began to panic near the front door and

pushed her towards the front of the store, ordering her to the ground. Co-conspirator Alexis Vegas pulled victim E.B. across the jewelry counter and forced her to the ground while the defendant held the remaining customers at gunpoint and ordered them to lay on the ground. Several customers laid on their bellies on the floor, carefully showing their hands to the defendant to emphasize that they were unarmed. *Id.*

The defendant remained in the front of the store, holding terrified customers and store employees at gunpoint, frequently waving and pointing his firearm in their direction. *See* Doc. 289, Exhibit 9. The defendant was alert and watchful, constantly observing the customers and employees and looking out the front door of the store, ostensibly so that he could warn his co-defendants if police or bystanders were approaching. Since the defendant maintained complete control over the customers and employees in the front of the store, Castillo-Delgado, Lozada-Solis and Vegas were able to jump over the jewelry counter to begin tearing jewelry off display racks and cases. Castillo-Delgado and Vegas piled jewelry and chains into bags they brought to the robbery. *Id.*

As the defendant kept the front of the store under control at gunpoint, Lozada-Solis forced his way through the employee only door behind the jewelry counters and into an employee room. Castillo-Delgado joined Lozada-Solis shortly thereafter, and the two jointly overtook several employees who were attempting to barricade their office door shut. Castillo-Delgado raced into a jewelry repair room behind the main storefront and violently forced victim employee J.H. to the ground at gunpoint. Exhibit 1[1] at 4:40-8:34. Once J.H. was on the ground, Castillo-Delgado pistol whipped him, or struck him in the back of the head with his firearm and began to grab jewelry that was in the room. *Id.* Meanwhile, Lozada-Solis forced his way into

---

[1] Exhibit 1 was produced in discovery at INV_00283 and will be conventionally filed with the court.

the employee office room behind the main storefront where victim employees M.C. and M.T. were blocking the door. Mere moments before, victim M.M. had fled into the office, grabbed her young child, and ran out of the store. Lozada-Solis and Castillo-Delgado both pointed their weapons at victim employees M.C. and M.T. and forced them to the ground at gunpoint. See Exhibit 2[2]. Lozada-Solis stood over M.C., straddling her while she lay on the floor. Castillo-Delgado reentered this employee room and grabbed M.T. by her ponytail, then dragged her across the office. Exhibit 3[3] at 1:36 – 1:54. While holding M.T. by the hair, Castillo-Delgado brutally struck M.T. in the head with his pistol, then punched her in the head and neck. *Id.* Castillo-Delgado also struck M.C. in the head with his firearm, then left Lozada-Solis to keep control over the women. *Id.* Lozada-Solis held the victims at gunpoint while Vegas, Castillo-Delgado and Lara del Toro moved the bags full of stolen jewelry through the office and out of the back door of the Joyeria El Ruby. The men exited the office at roughly 1:55 pm, according to surveillance footage. *Id.*

The defendant remained at the front of the store and kept control of the employees and customers until his co-defendants had filled their bags with as much jewelry as they could carry. The defendant then jumped over the jewelry counter, still brandishing his firearm, and helped his co-defendants drag the bags of jewelry out of the store. Meanwhile, co-defendants Derek Dun Vargas, Keiber Jaen Martinez and Jean Torres-Roman ran through the parking lot at the rear of the Joyeria El Ruby, and moved to the store's back door, which had been opened by Castillo Delgado. Co-defendant Torres-Roman acted as a lookout while Dun-Vargas and Jaen Martinez helped move bags of jewelry out of the store.

---

[2] Exhibit 2 was produced in discovery at INV_00295 and will be conventionally filed with the Court
[3] Exhibit 3 was produced in discovery at INV_00415 and will be conventionally filed with the Court

Once the bags of jewelry were out of the store, the defendant and co-defendants ran to the waiting getaway vehicles and sped away from the Joyeria El Ruby. After the defendants fled, the customers and employees at the front of the store slowly began to get up. Several customers were crying and fled the store to call 911. One employee, E.B., was so traumatized that she vomited in the store after the robbery had ended and fainted. In the employee rooms, M.C. and M.T. were seriously injured from the repeated assaults during the robbery. As M.C. and M.T. cautiously got up to call the police and assess the damage to their store, blood began to run down the side of both women's faces. M.C. used a towel to attempt to stop the bleeding from her scalp, and M.T. held her hand to her head to staunch the bleeding from her scalp. Exhibit 3.

M.C. and M.T. required medical treatment for their injuries. M.C. sustained a 3-centimeter laceration to her scalp which required staples for closure. M.T. sustained a 6-centimeter laceration to her scalp and required staples for closure. Both M.C. and M.T. required follow-up medical treatment for their injuries.

After the robbery, officers responded and photographed the Joyeria El Ruby, the extensive damage within the store and some of the injuries to the victims. Officers also reviewed surveillance footage from inside and outside the store, which depicted several defendants and their faces. A police bulletin was generated by the Denver Police Department and was shared publicly with a request for information.

Shortly after the robbery, agents received information that the robbery suspects were traveling to El Paso, Texas from Denver, and would be crossing the border into Mexico from El Paso. The defendant and co-defendants were located a motel in El Paso. Search warrants were obtained for the motel rooms and executed on June 27, 2024. The defendant was arrested inside

the motel, wherein agents also located several loaded firearms, cell phones and a small amount of jewelry from the Joyeria El Ruby.

In total, the loss to the Joyeria El Ruby was estimated to be between $3,942,594.26 and $4,261,139.53 in stolen merchandise. A fraction of that jewelry was recovered; the majority has not been located or recovered by law enforcement. Joyeria El Ruby was insured, for a maximum policy amount of $1,995,000. Joyeria El Ruby operated as both a retailer and a wholesaler, often purchasing large quantities of jewelry at wholesale, which they would then resell for a small profit. Much of the inventory stolen during the robbery had been either purchased by the victims or loaned to the victims to sell.

As a result, the victims have absorbed a loss of $1,947,594 in inventory, which they are unable to replace. Further, the victims have relayed that their prior insurance carrier has refused to continue coverage and has terminated their policy. The family must now find a new insurance carrier to cover their business, but each of the available carriers are far more expensive and require costly upgrades to the store's security that the victims are unable to afford.

Based on the communication after the robbery, which includes the defendant's jail calls, it is clear that the majority of the stolen jewelry was picked up by an associate of TdA leadership and transported out of the country. As a result of the defendant's conduct, a dangerous, violent, transnational criminal organization is many millions richer. Moreover, customers and employees who were unlucky enough to be in the Joyeria El Ruby on June 24, 2024 are forever altered by the defendant's actions. M.M., M.T and M.C. are all significantly traumatized by what they experienced. M.M. experienced panic and fear as she ran through her store to try to protect her young son from the armed intruders who had taken over the store. She then waited for agonizing minutes away from the store for help to arrive, not knowing if her family members and staff were

alive inside the store. M.T. and M.C. were each brutally assaulted by the gunmen who forced their way into their office space and forced to lay on the ground, bleeding, while their livelihood was stolen before their eyes.

The defendant played an integral role in the robbery and himself traumatized numerous victims. The defendant pointed a loaded firearm with an extended magazine at terrified customers and employees who laid on the ground, helpless, as the robbery took place. Had the defendant not held the store at gunpoint so effectively, the robbery would likely not have been successful. This conduct warrants a sentence of no less than 240 months imprisonment.

**b. History and Characteristics of the Defendant**

The defendant is 22 years old and has no criminal history in the United States. Doc. 286, ¶ 65. The defendant describes a difficult upbringing in Venezuela and a life of persistent poverty. Doc. 285, p. 5-6. The defendant stated that he moved from Venezuela to Colombia for his safety and looked for employment in Colombia, before immigrating to the United States in search of better opportunity. The defendant arrived in the United States in February of 2023, and was arrested on the instant offense in June of 2024. Doc. 286, ¶ 78. The defendant described beginning to use drugs on a daily basis leading up to the robbery, which may have impacted his choice to participate in the robbery.

The defendant's upbringing was undoubtedly tumultuous, difficult and marred by violence. What is deeply troubling is the defendant's choice to become a member of a TdA sect in Colorado, and his willingness to participate in the robbery to enrich himself and TdA leadership abroad. TdA frequently preys upon marginalized immigrant communities in the United States and in South America and maintains control of its territory by violence, extortion, kidnappings and killings. The defendant chose to victimize a store owned and operated by a

family who similarly immigrated to the United States in search of better prospects, but who had worked for decades to provide for themselves and to better their community.

**c. A sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, and protects the public from further crimes of the defendant**

The appropriate sentence in this case must achieve certain aims. The sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment, provide both general and specific deterrence from criminal conduct and protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(2). The offense conduct alone warrants a significant sentence. The robbery left two victims seriously physically injured and has imparted lasting emotional damage and trauma on the victims.

This robbery fell well outside the heartland of an average robbery case, in that the defendants conducted a brazen "takedown" style robbery with multiple guns and injured multiple victims within the store. The violence used by the co-defendants was shocking and unnecessary. In the context of other Hobbs Act robberies or even bank robberies, this robbery was extreme. A just sentence must adequately reflect the seriousness of the offense and provide just punishment. A total sentence of 240 months imprisonment is just and warranted under the circumstances.

The appropriate sentence must also provide both specific deterrence for this defendant against similar future conduct, and must provide general deterrence to others who may engage in similar conduct. This robbery was high profile and lucrative for the defendants. The defendants were tremendously proud of the robbery, laughing, celebrating and joking after the fact on calls. A sentence of 240 months imprisonment provides important deterrence against future crimes of this nature.

The defendant argues that he should receive a significantly lower sentence than defendants Castillo-Delgado and Torres-Roman. The defendant notes that defendant Castillo-Delgado physically used violence against victims in the robbery and had been involved in prior robberies. The defendant also notes that defendant Torres-Roman had attempted to escape from custody and had pending criminal matters in other jurisdictions. While these facts are certainly true, the defendant had a more aggravated role in the robbery than Torres-Roman. Torres-Roman was integral to the robbery, but did not enter the jewelry store and did not hold numerous victims at gunpoint. A sentence of 168 months as the defendant recommends, would result in an unwarranted sentence disparity. Such a sentence would treat the defendant, who was as much an active, armed participant in the robbery as defendant Castillo-Delgado, entirely differently. 18 U.S.C. §3553(a)(6) instructs that defendants with similar records who have been found guilty of similar conduct should not have sentence disparities. In this case, the defendant and co-defendant Castillo-Delgado are equally responsible for the offense conduct, and the defendant should be sentenced accordingly.

## III. CONCLUSION

Based upon the above factors, the Government argues that a total sentence of 240 months imprisonment followed by three years of supervised release is sufficient, but not greater than necessary, to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a).

Dated July 22, 2026

//

Respectfully submitted,

PETER MCNEILLY

United States Attorney

By: /s/ *Leah Perczak*
LEAH PERCZAK
Assistant United States Attorney
1801 California St., Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
E-mail: leah.perczak@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of July, 2026, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

By: *s/Leah Perczak*
LEAH PERCZAK
Assistant United States Attorney